1    CHRISTINE M. PAJAK (STATE BAR NO. 217173), and
     cpajak@stutman.com
2    NEETA MENON (STATE BAR NO. 254736), Members of
     nmenon@stutman.com
3    STUTMAN, TREISTER & GLATT
     PROFESSIONAL CORPORATION
4    1901 Avenue of the Stars, 12th Floor
     Los Angeles, CA 90067
5    Telephone:    (310) 228-5600
     Facsimile:    (310) 228-5788
6
7    Attorneys for NCB and NCB, FSB

8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                    RIVERSIDE DIVISION

| | |
|---|---|
| In re: | ) Case No. 6:09-16530-TD |
| | ) Case No. 6:09-16536-TD |
| WMI, a California corporation, | ) Case No. 6:09-16543-TD |
| | ) Case No. 6:09-16550-TD |
| In re: | ) |
| | ) Chapter 11 |
| WMI I, a California corporation, | ) |
| | ) **OBJECTION OF NCB AND NCB, FSB TO** |
| In re: | ) **DEBTORS' PROPOSED FORM OF** |
| | ) **ORDER RE EMERGENCY MOTION FOR** |
| WMIRE, a California corporation, | ) **USE OF CASH COLLATERAL PENDING** |
| | ) **A FINAL HEARING** |
| In re: | ) |
| | ) |
| WILLIAMS MECHANICAL, INC., a California | ) Hearing |
| corporation, | ) |
| | ) Date:      April 10, 2009 |
| Debtors. | ) Time:      10:00 a.m. |
| | ) Place: |
| | ) |
| | ) Appearance in Person |
| | ) Courtroom 1345 |
| | ) 255 E. Temple St. |
| | ) Los Angeles, CA 90012, or |
| | ) |
| | ) Appearance by Teleconference |
| | ) Courtroom 303 |
| | ) 3420 Twelfth St. |
| | ) Riverside, CA  92501 |

National Consumer Cooperative Bank, a federally chartered financial corporation ("NCB"), and NCB, FSB, a federally insured thrift institution ("NCB, FSB" and, together with NCB, the "Bank")[1] by its undersigned counsel, hereby files its objection to the proposed form of order proposed by the Debtors, which is attached hereto as Exhibit "A" (the "Debtors' Proposed Order"), with respect to the hearing held on April 8, 2009 at 1:00 p.m. (the "Hearing") on the "Debtors' Emergency Motion for Use of Cash Collateral on an Interim Basis Pending a Final Hearing" (the "Motion")[2] and in respect thereof asserts as follows:

1.      Shortly after the Hearing, Debtors' counsel sent Bank counsel a draft form of order on the Motion.  Within an hour of receiving the form of order, Bank counsel made edits and sent a redlined copy marking certain changes to the Debtors' proposed form of order.  Without so much as even a phone call, Debtors' counsel sent an e-mail informing that they had rejected all of Bank counsel's changes and would be lodging the original form of order with the Court, a copy of which is attached as Exhibit "A" hereto.  Contrary to this Court's direction, Debtors' counsel refused to engage in any meaningful discussions concerning the form of order to be lodged with the Court, asserted that it would take unilateral action, thereby causing this matter to proceed to immediate litigation.

2.      Notwithstanding the fact that (i) the Debtors took this course of action and (ii) the parties have not reached agreement on the form of order, the Bank honored the Court's oral ruling by wiring the amounts held in the Debtors' bank accounts (the "Debtors' Accounts") as well as $500,000 from the CD to the Debtors' DIP account this morning by 10:45 a.m. (Eastern Time). Because the Debtors' Accounts held approximately $483,000, the Bank wired a total of $983,000 to the Debtors' DIP account, which came from the following sources: (a) the Debtors' Accounts and (b) $500,000 from the CDs.  This amount far exceeded any of the Debtors' requested relief in the Motion.

3.      As noted at the Hearing, some confusion was expressed as to whether the Debtors' Accounts, in fact, held $483,000.  In particular, the Debtors' representative had previously

---

[1]    NCB, FSB is a wholly-owned subsidiary of NCB.

[2]    Terms not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

submitted a declaration under oath that the Debtors' Accounts had just $169,596 as of the Petition Date and, at the Hearing, expressed some concern as to whether $300,000 held in the Debtors' Accounts actually belonged to the ESOP Trust. As requested by the Court, attached as Exhibit "D" hereto, are screen shots of the Debtors' Account and ESOP Trust Account. As it turns out, the ESOP Trust Account did in fact hold approximately $300,000, but these monies were held in a different account at the Bank.[3]

4.    In sum, pursuant to the Debtors' Motion, the Debtors were seeking the ability to use, in total, up to roughly $670,000 of the Bank's cash collateral for a limited period of time. Giving the Debtors the benefit of the doubt, the Debtors did not realize that they had access to $483,000 in their accounts, which was separate and apart from the ESOP Trust Account. In essence, because of this mistake, the Court made a ruling at the Hearing that the Debtors were entitled to use the cash collateral available in the Debtors' Accounts as well as up to $500,000 in the CDs (to the extent necessary), thereby providing a windfall to the Debtors of more than $313,000 beyond the relief that the Debtors, themselves, had requested in the Motion. Notwithstanding this fact nor the fact that Debtors' counsel made representations on the record that the Debtors had no intention of using the monies from the CDs unless it was absolutely necessary, the Debtors now assert that they are entitled to use the full amount of the Bank's cash collateral that has been made available to them in the amount of $983,000. This far exceeded the intentions of any of the parties in attendance at the Hearing or the Court, itself. Therefore, the Bank seeks a clarification of the Court's ruling at the Hearing and requests that the Debtors be ordered to return to the Bank the $500,000 from the CDs or, at least a minimum of $400,000. By doing so, this would grant the full relief the Debtors originally requested in the Motion and no more.

5.    Despite the brevity of the Debtors' Proposed Order, it is rife with errors and is directly contrary to the statements made on the record by Debtors' counsel and the rulings of this Court.

---

[3]    On Thursday, April 9, 2009, the Bank had also been requested to send the monies in the ESOP Trust Account to the Debtors' DIP Account. These monies do not belong to the Debtors and, therefore, the Bank did not honor that request.

6. Because Debtors' Proposed Order is short, the Bank will raise its objections on a paragraph-by-paragraph basis, which objections are all reflected in the Bank's proposed form of order attached hereto as Exhibit "B" (the "Bank Proposed Order").  For the convenience of the Court, attached as Exhibit "C" is a redline copy of the Bank Proposed Order showing the changes made to the Debtors' Proposed Order.

7. The <u>first</u> paragraph of the Debtors' Proposed Order provides, in relevant, part: "The Motion is granted on an interim basis."  This statement is inaccurate as the Motion in toto was never approved by the Court.  Rather, the Court approved the Debtors' use of certain of the Bank's cash collateral on certain terms and conditions as reported on the record at the Hearing.  Therefore, the first sentence of this paragraph should be revised as follows:  The Motion**, as modified herein,** is granted on an interim basis.

8. The Bank has no objection to the <u>second</u> paragraph of the Debtors' Proposed Order but suggests that "Budget" be defined for later use in the order.

9. The <u>third</u> paragraph of the Debtors' Proposed Order provides:

> The Debtors are authorized to use cash collateral pursuant to the terms of the Motion, including but not limited to up to $500,000 of the money held by the Bank as evidenced by certificates of deposit (the "CD's"), through and including the conclusion of the Second Interim Hearing.

Using ambiguous language, not only do the Debtors overreach but they fail to include any of the specific limitations placed on, or assented to, the Debtors' use of cash collateral.  The Court did not authorize the Debtors to use any and all cash collateral but rather placed clear limits on the Debtors' use of cash collateral.  Moreover, Debtors' counsel specifically clarified, on the record, that the Debtors had no intention of using the monies in the certificates of deposit, <u>except to the extent that it was needed</u>.  Thus, it is appropriate that this limit be imposed on the Debtors' use of this cash collateral.  Finally, the terms of the Motion were never discussed at the Hearing but, rather, the parties all focused their arguments on the Debtors' needs according to the Budget attached to the Motion.  At no point in time did Debtors' counsel ever suggest that the Debtors' needs were greater than the amounts included in the Budget.  In fact, ruling that it was appropriate to grant the Debtors access up to $500,000 in the CDs, the Court relied on the figures in the Budget and Debtors'

counsel's representation that it would not use the monies in the CD unless necessary -- not once did the Court consider any other additional allowances requested in the Motion nor was this relief ever requested by Debtors' counsel. These points need clarification in the Debtors' Proposed Order and the Bank suggests the following language in its alternative form of order:

> **The Debtors are authorized to use cash collateral as described in the Motion (the "Cash Collateral"), pursuant to the terms of the Budget through and including the conclusion of the Second Interim Hearing; provided, however, that, with respect to the certificates of deposit ("CDs") currently being held by the Bank as Cash Collateral, the Debtors shall have the right to use no more than $500,000 of any such CDs only to meet expenses provided for in the Budget that cannot otherwise be paid from monies in the Debtors' bank accounts, including any post-petition collections paid into such accounts.**

10.     The <u>fourth</u> paragraph of the Debtors' Proposed Order provides:

> The Bank (and any other creditor who asserts a lien against the Debtors' cash collateral) is hereby granted a replacement lien against the Debtors' assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by such creditor. In addition, the Bank shall be shall be entitled to replacement liens against all of the Debtors' assets but only to the extent of any diminution in the value of the Bank's collateral.

This paragraph is <u>directly</u> contrary to the Court's ruling at the Hearing. As explained at length at the Hearing, the Debtors contest the validity of any pre-petition lien of the Bank against the assets of WMI I. Notwithstanding that fact, the Debtors sought to seize the cash collateral of the Bank that secured the outstanding obligations owed by another Debtor (Mechanical) to pay the operating expenses of WMI I. As summarized briefly in the Bank's opposition to the Motion, the Debtors sought to rob Peter to pay Paul. To correct the inequities caused by this situation, the Bank sought clarification that, to the extent that the Court authorized the Debtors' use of cash collateral, the Bank's post-petition replacement liens would extend to the assets of all of the Debtors to the extent of any diminution in value of the Bank's cash collateral. In fact, Debtors' counsel specifically assented to this relief on the record and the Court agreed that this was a fair result. Debtors' counsel memory appears to be short, however, and the Debtors' Proposed Order states that the Bank's replacement liens are limited only to the "same extent, validity, and priority as the pre-petition lien" held by the Bank. The fact that the order states that the replacement liens extends to all of the Debtors' assets with respect to the diminution in value of the cash collateral offers little comfort if

their "validity and priority" are limited to the same extent as the Bank's pre-petition liens. In light of these concerns, the Bank proposed alternative language, which also sought to clarify that the Bank did not waive any of its rights nor did it have undertake any affirmative action to perfect these post-petition replacement liens (which is the type of relief commonly granted in cash collateral orders).

11. Furthermore, the Bank also included language clarifying that the Bank would have a super priority claim to the extent that the replacement liens were insufficient to protect the Bank against the diminution in value of the Bank's Cash Collateral. The Debtors opposed the inclusion of this language in the order because it had not specifically requested this language at the Hearing. While not specifically requested, this language is commonly granted in cash collateral orders and, more importantly, became critical due to the subsequent events that occurred after the Hearing. As explained above, the Bank had released $983,000 in cash collateral to the Debtors, which far exceeded any amounts requested by the Debtors or even considered by the Court. To ensure that the Bank would receive the protections attendant to its risks, the Bank included language that provided for a super priority claim. The Bank hereby clarifies that it seeks this type of relief with respect to the Debtors' use of the Bank's cash collateral.

12. Therefore, taking all of these points into consideration, the Bank's Proposed Order includes the following language:

> **As adequate protection for and to the extent of any diminution in value of the Bank's interest in the Cash Collateral resulting from the Debtors' post-petition use of Cash Collateral pursuant to Bankruptcy Code section 363(c) and this Order:**
>
> **(i)** **Effective upon entry of this Order, and without the necessity of the execution or recordation of mortgages, security agreements, pledge agreements, financing statements or otherwise, Bank is hereby granted valid, duly perfected and non-avoidable replacement security interests and liens in and to all of the Debtors' assets as partial adequate protection (the "Adequate Protection Liens").**
>
> **(ii)** **Effective upon entry of this Order and continuing by through the entry of a final cash collateral Order, Bank shall be deemed to have an allowed superpriority adequate protection claim to the extent the Bank's Adequate Protection Liens are not adequate to protect the Bank against the diminution in value of the Bank's Cash Collateral (the "Superpriority Adequate Protection Claim"). The Superpriority Adequate Protection Claim shall have priority**

**over all other administrative expenses in these bankruptcy cases, including any conversion to chapter 7, of the kind specified in or arising or ordered pursuant to Bankruptcy Code sections 326, 328, 330, 331, 503(b), 507(a), 507(b), 726 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment or otherwise.**

**(iii)  No Adequate Protection Lien granted to the Bank hereunder, shall (i) be subject to any prepetition or postpetition lien or security interest that is (A) avoided and preserved for the benefit of the Debtors; estates under Bankruptcy Code section 551 or otherwise, or (B) be subject to subordination under Bankruptcy Code section 510 or otherwise, (ii) hereafter be subordinated to or made <u>pari passu</u> with any other lien or security interest under Bankruptcy Code section 364(d).**

**(iv)  Nothing herein shall be deemed to be a waiver by the Bank of its rights to request additional or further protection of its interest in any property of any of the Debtors' estates.  The Bank is deemed to have reserved all rights to assert entitlement to the protections and benefits of Bankruptcy Code section 507(b) in connection with any use, sale, or other disposition of any of their respective collateral to the extent that the protection afforded by any interim or final cash collateral order, or any other order of this Court proves to be inadequate.**

13.     Finally, with respect to the <u>fifth</u> and <u>sixth</u> paragraphs, the Bank merely seeks to clarify that the Debtors are required to provide notice to interested parties of the Second Interim Hearing and Final Hearing, and parties may oppose relief to grant final approval of the Motion at the Final Hearing.

14.     In light of the evidence that has now been made available to the Debtors and the Court, it is appropriate that the Court's oral ruling at the Hearing be clarified to limit the Debtors' ability to use the Bank's cash collateral, especially since the Debtors, themselves, never even requested the ability to have access to up to almost $1 million of the Bank's cash collateral.  In that regard, the Bank respectfully requests that the Court include in its order additional language requiring that the Debtors wire monies back to the Bank and suggest the following language:

> **Notwithstanding anything else to the contrary herein, the Debtors' right to use Cash Collateral on an interim basis is limited to those amounts requested in the Motion and, therefore, the Debtors are required to wire $500,000 of the Cash Collateral that it received back to the Bank within one business day from the entry of this Order.  Nothing herein shall limit the rights of the Debtors to request the use of**

**additional sums of Cash Collateral at or prior to the Second Interim Hearing.**

WHEREFORE, for all the reasons set forth above, the Bank respectfully requests that this Court enter the Bank's Proposed Order attached hereto as Exhibit "B".

Dated: April 9, 2009

            ____/s/ Christine M. Pajak_____
            Christine M. Pajak, and
            Neeta Menon, Members of
            STUTMAN, TREISTER & GLATT
            PROFESSIONAL CORPORATION

            Attorneys for NCB and NCB, FSB

# EXHIBIT A

1  RON BENDER (SBN 143364)
   JACQUELINE L. RODRIGUEZ (SBN 198838)
2  LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
3  10250 Constellation Blvd., Suite 1700
   Los Angeles, California 90067
4  Telephone: (310) 229-1234
   Facsimile: (310) 229-1244
5  Emails:    rb@lnbrb.com; jlr@lnbrb.com

6  Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

7              UNITED STATES BANKRUPTCY COURT
8               CENTRAL DISTRICT OF CALIFORNIA
                     (RIVERSIDE DIVISION)
9

| | |
|---|---|
| 10  In re:<br>WMI, a California corporation,<br>_____ | )  Case No.  6:09-16530-TD<br>)  Case No.  6:09-16536-TD<br>)  Case No.  6:09-16543-TD<br>)  Case No.  6:09-16550-TD |
| 11  In re:<br>12  WMI I, a California corporation,<br>_____ | )<br>)<br>)  Chapter 11 |
| 13  In re:<br>WMIRE, a California corporation,<br>14  _____ | )<br>)<br>)  **ORDER: (1) AUTHORIZING DEBTORS'**<br>)  **USE OF CASH COLLATERAL ON AN** |
| 15  In re:<br>WILLIAMS MECHANICAL, INC.,<br>16  a California corporation,<br>_____ | )  **INTERIM BASIS; AND (2) SETTING A**<br>)  **SECOND INTERIM HEARING ON**<br>)  **DEBTORS' EMERGENCY MOTION FOR**<br>)  **THE USE OF CASH COLLATERAL**<br>) |
| 17 | ) |
| 18             Debtors. | )  Hearing:<br>)  Date:    April 22, 2009 |
| 19 | )  Time:    11:00 a.m.<br>)  Place:   Appearance By Teleconference |
| 20 | )          Courtroom 303<br>)          3420 Twelfth Street |
| 21 | )          Riverside, CA 92501, or<br>) |
| 22 | )          Appearance In Person<br>)          Courtroom 1345 |
| 23 | )          255 E. Temple St.<br>)          Los Angeles, CA  90012 |
| 24 | ) |
| 25 | )<br>) |
| 26  _____ | ) |

27

28

1

EXHIBIT A

On April 8, 2009, at 1:00 p.m., at the above-referenced locations, the Court held a hearing on the Emergency Motion for an Order Authorizing the Use of Cash Collateral on an Interim Basis Pending a Final Hearing (the "Motion") filed by WMI, WMI I, WMIRE, and Williams Mechanical, Inc. ("Mechanical" and with WMI, WMI I, and WMIRE referred to herein as "the Debtors"), the debtors and debtors in possession in the above-entitled Chapter 11 bankruptcy cases (the "Debtors"). Appearances were made as set forth on the record of the Court.

Upon consideration of the Motion, the opposition to the Motion filed by NCB and NCB, FSB (jointly referred to herein as the "Bank"), evidence in support of the foregoing duly admitted into evidence by the Court, and the arguments of counsel made at the hearing on the Motion, and for good cause shown,

**IT IS HEREBY ORDERED**, as follows:

1.      The Motion is granted on an interim basis.  A second interim hearing on the Motion shall be held on April 22, 2009 at 11:00 a.m. (the "Second Interim Hearing").

2.      The budget attached as Exhibit "A" to the Motion is approved.

3.       The Debtors are authorized to use cash collateral pursuant to the terms of the Motion, including but not limited to up to $500,000 of the money held by the Bank as evidenced by certificates of deposit (the "CD's"), through and including the conclusion of the Second Interim Hearing.

4.      The Bank (and any other creditor who asserts a lien against the Debtors' cash collateral) is hereby granted a replacement lien against the Debtors' assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by such creditor.  In addition, the Bank shall be shall be entitled to replacement liens against all of the Debtors' assets but only to the extent of any diminution in the value of the Bank's collateral.

EXHIBIT A

5.    The replacement lien(s) granted pursuant hereto shall constitute adequate protection of the Bank's interest in the Debtors' cash collateral (and the interests of any other creditor who assets a lien against the Debtors' cash collateral).

4.    The Debtor shall provide notice of the final hearing to all secured creditors, the Debtors' 20 largest unsecured creditors or an Official Committee of Unsecured Creditors, all parties who have requested special notice, and the Office of the United States Trustee.

5.    Any objection to final approval of the Motion may be delivered orally or in writing up to and including the time of the Second Interim Hearing (including telephonically).

**IT IS SO ORDERED.**

Dated:_____        _____

THE HONORABLE THOMAS DONOVAN
UNITED STATES BANKRUPTCY JUDGE

3

EXHIBIT A

# EXHIBIT B

RON BENDER (SBN 143364)
JACQUELINE L. RODRIGUEZ (SBN 198838)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Emails:    rb@lnbrb.com; jlr@lnbrb.com

Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## (RIVERSIDE DIVISION)

| | |
|---|---|
| In re:<br>WMI, a California corporation,<br>_____<br>In re:<br>WMI I, a California corporation,<br>_____<br>In re:<br>WMIRE, a California corporation,<br>_____<br>In re:<br>WILLIAMS MECHANICAL, INC.,<br>a California corporation,<br>_____<br><br> Debtors. <br>_____ | ) Case No.  6:09-16530-TD<br>) Case No.  6:09-16536-TD<br>) Case No.  6:09-16543-TD<br>) Case No.  6:09-16550-TD<br>)<br>) Chapter 11<br>)<br>)<br>) **[PROPOSED ALTERNATIVE] ORDER: (1) AUTHORIZING DEBTORS' USE OF CASH COLLATERAL ON AN INTERIM BASIS; AND (2) SETTING A SECOND INTERIM HEARING ON DEBTORS' EMERGENCY MOTION FOR THE USE OF CASH COLLATERAL**<br>)<br>)  <u>Continued Hearing</u>:<br>)<br>) Date:    April 22, 2009<br>) Time:    11:00 a.m.<br>) Place:   <u>Appearance By Teleconference</u><br>)          Courtroom 303<br>)          3420 Twelfth Street<br>)          Riverside, CA 92501, <u>or</u><br>)<br>)          <u>Appearance In Person</u><br>)          Courtroom 1345<br>)          255 E. Temple St.<br>)          Los Angeles, CA  90012<br>)<br>) |

1

EXHIBIT B

485664v1

On April 8, 2009, at 1:00 p.m., at the above-referenced locations, the Court held a hearing on the Emergency Motion for an Order Authorizing the Use of Cash Collateral on an Interim Basis Pending a Final Hearing (the "Motion") filed by WMI, WMI I, WMIRE, and Williams Mechanical, Inc. ("Mechanical" and with WMI, WMI I, and WMIRE referred to herein as "the Debtors"), the debtors and debtors in possession in the above-entitled Chapter 11 bankruptcy cases (the "Debtors"). Appearances were made as set forth on the record of the Court.

Upon consideration of the Motion, the opposition to the Motion filed by NCB and NCB, FSB (jointly referred to herein as the "Bank"), evidence in support of the foregoing duly admitted into evidence by the Court, and the arguments of counsel made at the hearing on the Motion, and for good cause shown,

**IT IS HEREBY ORDERED**, as follows:

1.     The Motion, as modified herein, is granted on an interim basis.  A second interim hearing on the Motion shall be held on April 22, 2009 at 11:00 a.m. (the "Second Interim Hearing").

2.     The budget attached as Exhibit "A" to the Motion (the "Budget") is approved.

3.     The Debtors are authorized to use cash collateral as described in the Motion (the "Cash Collateral"),  pursuant to the terms of the Budget through and including the conclusion of the Second Interim Hearing; provided, however, that, with respect to the certificates of deposit ("CDs") currently being held by the Bank as Cash Collateral, the Debtors shall have the right to use no more than $500,000 of any such CDs only to meet expenses provided for in the Budget that cannot otherwise be paid from monies in the Debtors' bank accounts, including any post-petition collections paid into such accounts.

4.     As adequate protection for and to the extent of any diminution in value of the Bank's interest in the Cash Collateral resulting from the Debtors' post-petition use of Cash Collateral pursuant to Bankruptcy Code section 363(c) and this Order:

(i)     Effective upon entry of this Order, and without the necessity of the execution or recordation of mortgages, security agreements, pledge agreements, financing

2

statements or otherwise, Bank is hereby granted valid, duly perfected and non-avoidable replacement security interests and liens in and to all of the Debtors' assets as partial adequate protection (the "Adequate Protection Liens").

(ii)     Effective upon entry of this Order and continuing by through the entry of a final cash collateral Order, Bank shall be deemed to have an allowed superpriority adequate protection claim to the extent the Bank's Adequate Protection Liens are not adequate to protect the Bank against the diminution in value of the Bank's Cash Collateral (the "Superpriority Adequate Protection Claim"). The Superpriority Adequate Protection Claim shall have priority over all other administrative expenses in these bankruptcy cases, including any conversion to chapter 7, of the kind specified in or arising or ordered pursuant to Bankruptcy Code sections 326, 328, 330, 331, 503(b), 507(a), 507(b), 726 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment or otherwise.

(iii)     No Adequate Protection Lien granted to the Bank hereunder, shall (i) be subject to any prepetition or postpetition lien or security interest that is (A) avoided and preserved for the benefit of the Debtors; estates under Bankruptcy Code section 551 or otherwise, or (B) be subject to subordination under Bankruptcy Code section 510 or otherwise, (ii) hereafter be subordinated to or made pari passu with any other lien or security interest under Bankruptcy Code section 364(d).

(iv)     Nothing herein shall be deemed to be a waiver by the Bank of its rights to request additional or further protection of its interest in any property of any of the Debtors' estates.  The Bank is deemed to have reserved all rights to assert entitlement to the protections and benefits of Bankruptcy Code section 507(b) in connection with any use, sale, or other disposition of any of their respective collateral to the extent that the protection afforded by any interim or final cash collateral order, or any other order of this Court proves to be inadequate.

3

5.     The Debtor shall provide notice of the Second Interim Hearing and Final Hearing to all secured creditors, the Debtors' 20 largest unsecured creditors or an Official Committee of Unsecured Creditors, all parties who have requested special notice, and the Office of the United States Trustee.

6.     Any objection to final approval of the Motion may be delivered orally or in writing up to and including the time of the Final Hearing (including telephonically).

7.     Notwithstanding anything else to the contrary herein, the Debtors' right to use Cash Collateral on an interim basis is limited to those amounts requested in the Motion and, therefore, the Debtors are required to wire $500,000 of the Cash Collateral that it received back to the Bank within one business day from the entry of this Order. Nothing herein shall limit the rights of the Debtors to request the use of additional sums of Cash Collateral at or prior to the Second Interim Hearing.


**IT IS SO ORDERED.**


Dated:_____                  _____
                                     THE HONORABLE THOMAS DONOVAN
                                     UNITED STATES BANKRUPTCY JUDGE


                                     # # #

4

EXHIBIT B

# EXHIBIT C

1    RON BENDER (SBN 143364)
     JACQUELINE L. RODRIGUEZ (SBN 198838)
2    LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
     10250 Constellation Blvd., Suite 1700
3    Los Angeles, California 90067
     Telephone: (310) 229-1234
4    Facsimile: (310) 229-1244
     Emails:     rb@lnbrb.com; jlr@lnbrb.com
5

6    Proposed Attorneys for Chapter 11 Debtors and Debtors in Possession

7

**UNITED STATES BANKRUPTCY COURT**
8             **CENTRAL DISTRICT OF CALIFORNIA**
                  **(RIVERSIDE DIVISION)**
9

| | |
|---|---|
| 10   In re: <br> WMI, a California corporation, | ) Case No. 6:09-16530-TD <br> ) Case No. 6:09-16536-TD |
| 11   _____ <br> In re: | ) Case No. 6:09-16543-TD <br> ) Case No. 6:09-16550-TD <br> ) |
| 12   WMI I, a California corporation, | ) <br> ) Chapter 11 |
| 13   _____ <br> In re: | ) <br> ) |
| 14   WMIRE, a California corporation, <br> _____ | ) **[PROPOSED ALTERNATIVE]** ORDER: <br> ) **(1) AUTHORIZING DEBTORS' USE OF** <br> ) **CASH COLLATERAL ON AN INTERIM** |
| 15   In re: <br> WILLIAMS MECHANICAL, INC., | ) **BASIS; AND (2) SETTING A SECOND** <br> ) **INTERIM HEARING ON DEBTORS'** <br> ) **EMERGENCY MOTION FOR THE USE** |
| 16   a California corporation, | ) **OF CASH COLLATERAL** <br> ) |
| 17   _____ | ) <br> ) |
| 18          Debtors. | ) Continued Hearing: <br> ) |
| 19 | ) Date:    April 22, 2009 <br> ) Time:    11:00 a.m. |
| 20 | ) Place:   Appearance By Teleconference <br> )         Courtroom 303 |
| 21 | )         3420 Twelfth Street <br> )         Riverside, CA 92501, or |
| 22 | ) |
| 23 | )         Appearance In Person <br> )         Courtroom 1345 |
| 24 | )         255 E. Temple St. <br> )         Los Angeles, CA  90012 |
| 25 | ) |
| 26   _____ | ) |

27

28                               1

EXHIBIT C

On April 8, 2009, at 1:00 p.m., at the above-referenced locations, the Court held a hearing on the Emergency Motion for an Order Authorizing the Use of Cash Collateral on an Interim Basis Pending a Final Hearing (the "Motion") filed by WMI, WMI I, WMIRE, and Williams Mechanical, Inc. ("Mechanical" and with WMI, WMI I, and WMIRE referred to herein as "the Debtors"), the debtors and debtors in possession in the above-entitled Chapter 11 bankruptcy cases (the "Debtors"). Appearances were made as set forth on the record of the Court.

Upon consideration of the Motion, the opposition to the Motion filed by NCB and NCB, FSB (jointly referred to herein as the "Bank"), evidence in support of the foregoing duly admitted into evidence by the Court, and the arguments of counsel made at the hearing on the Motion, and for good cause shown,

**IT IS HEREBY ORDERED**, as follows:

~~1.~~ 1. The Motion, as modified herein, is granted on an interim basis. A second interim hearing on the Motion shall be held on April 22, 2009 at 11:00 a.m. (the "Second Interim Hearing").

~~2.~~ 2. The budget attached as Exhibit "A" to the Motion (the "Budget") is approved.

~~3.~~ 3. The Debtors are authorized to use cash collateral as described in the Motion (the "Cash Collateral"), pursuant to the terms of the ~~Motion, including but not limited to up to $500,000 of the money held by the Bank as evidenced by certificates of deposit (the "CD's"),~~ Budget through and including the conclusion of the Second Interim Hearing.; provided, however, that, with respect to the certificates of deposit ("CDs") currently being held by the Bank as Cash Collateral, the Debtors shall have the right to use no more than $500,000 of any such CDs only to meet expenses provided for in the Budget that cannot otherwise be paid from monies in the Debtors' bank accounts, including any post-petition collections paid into such accounts.

~~4.     The Bank (and any other creditor who asserts a lien against the Debtors' cash collateral) is hereby granted a replacement lien against the Debtors' assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by~~

2

EXHIBIT C

~~such creditor. In addition, the Bank shall be shall be entitled to replacement liens against all of the Debtors' assets but only to the extent of any diminution in the value of the Bank's collateral.~~

~~5. The replacement lien(s) granted pursuant hereto shall constitute adequate protection of the Bank's interest in the Debtors' cash collateral (and the interests of any other creditor who assets a lien against the Debtors' cash collateral).~~

4. As adequate protection for and to the extent of any diminution in value of the Bank's interest in the Cash Collateral resulting from the Debtors' post-petition use of Cash Collateral pursuant to Bankruptcy Code section 363(c) and this Order:

(i) Effective upon entry of this Order, and without the necessity of the execution or recordation of mortgages, security agreements, pledge agreements, financing statements or otherwise, Bank is hereby granted valid, duly perfected and non-avoidable replacement security interests and liens in and to all of the Debtors' assets as partial adequate protection (the "Adequate Protection Liens").

(ii) Effective upon entry of this Order and continuing by through the entry of a final cash collateral Order, Bank shall be deemed to have an allowed superpriority adequate protection claim to the extent the Bank's Adequate Protection Liens are not adequate to protect the Bank against the diminution in value of the Bank's Cash Collateral (the "Superpriority Adequate Protection Claim"). The Superpriority Adequate Protection Claim shall have priority over all other administrative expenses in these bankruptcy cases, including any conversion to chapter 7, of the kind specified in or arising or ordered pursuant to Bankruptcy Code sections 326, 328, 330, 331, 503(b), 507(a), 507(b), 726 or 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, attachment or otherwise.

(iii) No Adequate Protection Lien granted to the Bank hereunder, shall (i) be subject to any prepetition or postpetition lien or security interest that is (A) avoided

3

EXHIBIT C

and preserved for the benefit of the Debtors; estates under Bankruptcy Code section 551 or otherwise, or (B) be subject to subordination under Bankruptcy Code section 510 or otherwise, (ii) hereafter be subordinated to or made pari passu with any other lien or security interest under Bankruptcy Code section 364(d).

(iv) Nothing herein shall be deemed to be a waiver by the Bank of its rights to request additional or further protection of its interest in any property of any of the Debtors' estates. The Bank is deemed to have reserved all rights to assert entitlement to the protections and benefits of Bankruptcy Code section 507(b) in connection with any use, sale, or other disposition of any of their respective collateral to the extent that the protection afforded by any interim or final cash collateral order, or any other order of this Court proves to be inadequate.

4.5. The Debtor shall provide notice of the final hearing Second Interim Hearing and Final Hearing to all secured creditors, the Debtors' 20 largest unsecured creditors or an Official Committee of Unsecured Creditors, all parties who have requested special notice, and the Office of the United States Trustee.

5.6. Any objection to final approval of the Motion may be delivered orally or in writing up to and including the time of the Second Interim Final Hearing (including telephonically).

7. Notwithstanding anything else to the contrary herein, the Debtors' right to use Cash Collateral on an interim basis is limited to those amounts requested in the Motion and, therefore, the Debtors are required to wire $500,000 of the Cash Collateral that it received back to the Bank within one business day from the entry of this Order. Nothing herein shall limit the rights of the Debtors to request the use of additional sums of Cash Collateral at or prior to the Second Interim Hearing.

**IT IS SO ORDERED.**

4

EXHIBIT C

Dated:_____          _____

                             THE HONORABLE THOMAS DONOVAN
                             UNITED STATES BANKRUPTCY JUDGE


                             # # #


5

EXHIBIT C

Document comparison done by DeltaView on Thursday, April 09, 2009 1:17:11 PM

| Input: | |
|--------|---|
| Document 1 | file://C:/Documents and Settings/cpajak/Desktop/OrderCashCollateral_interim1_v1.DOC |
| Document 2 | iManageDeskSite://STGINT/iManage/485664/1 |
| Rendering set | Standard |

| Legend: | |
|---------|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|-------------|---|
| | Count |
| Insertions | 38 |
| Deletions | 12 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 52 |

EXHIBIT C

# EXHIBIT D

TC 597   205732199         MULTIPLE ACCTS TAX ID LONG INQUIRY         DATE 04-07-09 2
ENTER 999 TO CANCEL: [    ]

POSITION CURSOR AND DEPRESS ENTER.

                                                                        MMN
                                                                        SM

                    ACCOUNT NUMBER   -----------------  ACCOUNT INFORMATION ----------------
01: [    ]  DD      540124851         UMI      RATE  0.00%     BAL        370,000.00
                    20-5732199 OPEN 10/19/07   NSF       0    AVL        483,186.95


                                    Sweep into This


COMMAND: [    ]   ...ACCT: [    ]  .....  .. . . ...... ...   PLUS: [    ]  :  ...........  . . .  ....

                                                              [Submit] [Cancel]

TC 597  743081517    MULTIPLE ACCTS TAX ID LONG INQUIRY    DATE 04-07-09 2

ENTER 999 TO CANCEL: [

POSITION CURSOR AND DEPRESS ENTER.

01: [
      DD

      ACCOUNT NUMBER          -------------- ACCOUNT INFORMATION --------------
      540109070      UHI EMPLOYEE ST RATE   0.00%  BAL              .00
      74-3081517     OPEN 09/14/06   NSF       0    AVL      307,573.06

                              WM ESOP

                                                              - Victney

COMMAND: [    ] ACCT: [                                    ] PLUS: [        ]

                                                          Submit  Cancel

| In re:<br>WMI, a California corporation, et al.<br><br>Debtors | CHAPTER 11<br><br>CASE NUMBER 6:09-16530-TD, et al |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067

The foregoing document described as **OBJECTION OF NCB AND NCB, FSB TO DEBTORS' PROPOSED FORM OF ORDER RE EMERGENCY MOTION FOR USE OF CASH COLLATERAL PENDING A FINAL HEARING** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 9, 2009** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Ron Bender                              rb@lnbrb.com

Jacqueline L. Rodriguez        jlr@lnbrb.com

United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

☐   Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☐   Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                    **F 9013-3.1**
485565v1

| In re:<br>WMI, a California corporation, et al.<br><br>                                              Debtors | CHAPTER 11<br><br>CASE NUMBER 6:09-16530-TD, et al |
| --- | --- |

### III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

Hon. Thomas Donovan           (to be served either by hand delivery or electronic service)

Ron Bender                      rb@lnbrb.com

Jacqueline L. Rodriguez         jlr@lnbrb.com

United States Trustee (RS)      ustpregion16.rs.ecf@usdoj.gov

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 9, 2009 | Denice Gonzalez | /s/ Denice Gonzalez |
| --- | --- | --- |
|  | *Type Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*
485565v1

**F 9013-3.1**